C. J. GOLDAMMER, L. K. Goldammer,
and C. Jack Goldammer, d.b.a. Dairy
Queen of Colorado, Appellant,

v.

Ralph E. FAY and Ruth E. Fay,
Appellees.

No. 7276.

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1964.

Owen J. Ooms, Chicago, Ill. (Philip
A. Rouse, Denver, Colo., and Francis T.
Drumm, Chicago, Ill., on the brief), for
appellant.

Bernard L. Trott, Colorado Springs,
Colo. (Howard J. Kunstle, Colorado
Springs, Colo., on the brief), for appel-
lees.

Before PICKETT, LEWIS and BREI-
TENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The Goldammers, doing business as
Dairy Queen of Colorado, owned the right
to use the trademark, trade name, and
other business indicia of "Dairy Queen"
in the State of Colorado. They did not
operate Dairy Queen stores, but granted
franchises to different individuals for the
establishment and operation of stores as
outlets for Dairy Queen products. On
March 1, 1958 a franchise was issued to
Ralph E. Fay and his wife, Ruth, for a
Dairy Queen operation in a specified area
in the City of Colorado Springs, Colorado.
The franchise agreement required the
Fays to conduct the business in a certain
manner, including the use of a "mix"
formula obtained only from sources ap-
proved by Dairy Queen, and to make fix-
ed payments to the Goldammers in the
nature of royalties. Provision was made
for the termination of the franchise if its
terms were not complied with. Upon
termination or expiration of the fran-

chise, the Fays agreed that they would not "directly or indirectly engage in any competitive business in said territory for a period of two (2) years after the termination or expiration of this Agreement." Fay failed to make the required payments and the franchise was terminated by the plaintiffs.

This action was brought to recover the amounts due under the contract, and for an injunction prohibiting the Fays from operating a competitive business in the territory, and for damages. The trial court entered judgment in favor of the Goldammers for the money claimed, but denied any relief for violation of the restrictive covenants. This is an appeal from that portion of the judgment which denied the injunction and damages for the alleged violation of the restrictive provisions of the franchise.

The essential facts are not in substantial dispute. "Dairy Queen" is a trade name used by stores operating throughout the United States for the sale of soft mix ice cream and other frozen food products prepared from a special formula. There were 27 of these stores in the State of Colorado, operating under franchises from the Goldammers. The franchise operators, at their own expense, are required to use a distinctive type of building, together with special signs and other appurtenances. The Dairy Queen products are nationally advertised. With the consent of the Goldammers, the Fays acquired one of these outlets in Colorado Springs, Colorado from an existing franchise owner, and later a franchise was issued directly to them. With the exception of some minor items, the Fays owned the building, machinery, signs, and other equipment necessary for the operation of the business. Following the termination of the franchise, and as soon as possible, they changed the Dairy Queen sign to "Dairy Bar" and the business was continued as "Fay's Drive-In." Although dairy products, including soft mix ice cream were sold, the operation was of a restaurant or coffee shop type of business.[1] They had a total of approximately $55,000 invested in the business. In the immediate vicinity of the Fay's eating place, there were numerous other businesses dispensing soft ice cream products.

In denying the injunction, the trial court assumed that the restrictive covenant was valid and that there had been a violation thereof, but found that the Goldammers had failed to prove they had been damaged because of the violation, and that there was no evidence of irreparable injury.[2]

---

1. In describing the nature of the business, Mr. Fay testified:

"Q. Now, with reference to your present operation, could you describe to the Court the type of products that you sell? A. Well, we sell all types of sandwiches, hamburgers, cheeseburgers, fish sandwiches, french fries, ham sandwiches, steaks, shrimp, milk, bread; milk by the half-gallon to carry home; hard ice cream in different flavors; most types of soft drinks; cones, malts, shakes, sundaes, novelties, candy bars, cigarettes, pie, cake.

"Q. All right. You still also, do you not, dispense soft mix ice creams? A. Yes.

"Q. In cones, cups, sundaes and so forth? A. Yes.

"Q. Would it be possible consistent with good business practice, to continue the operation of any part of your business if you are unable to sell dairy products? A. No."

2. In its findings, the trial court stated:

"Now, as to the matter of the injunction, again we have the same problem as to whether or not the anti-competitive provision is valid. But assuming it is valid and assuming a violation thereof of the defendants, there has been no proof of the fundamental requirements for granting injunctive relief, or, at least, which would appeal to this Court in exercise of its discretion in granting any injuncive (sic) relief. There is no proof of any irreparable damage. There is no indication of any reason why, if there has or will be a violation of this provision which will result in damages which can be proved—that compensation and damages are not sufficient. Injunctive relief is a relief that is granted very sparingly by the Courts generally and by this Court in particular. There has been no proof of any circumstances or any irreparable injury which would lead this Court to grant the drastic relief of injunction."

To prove they were being damaged by the Fay's new operation, the Goldammers testified that they had not been able to sell another franchise in the area. There was evidence to the effect that they had negotiated with a number of persons interested in a franchise there, but other than the conclusions of the Goldammers, there was no credible evidence that the business operation of the Fay's was a controlling or important factor in the refusal of any party to acquire a franchise.

Injunction is a drastic remedy to be exercised with caution, and should be granted only in cases where the necessity therefor is clearly established. 43 C.J.S. Injunctions § 15. Compton v. Knuth, 117 Colo. 523, 190 P.2d 117. In the absence of a statutory provision, injunctive relief is not a matter of right, and the granting or refusing of such relief rests in the sound discretion of the court. Of course, the exercise of this discretion should not be arbitrary, and is subject to review. 43 C.J.S. Injunctions § 14; Allen v. City and County of Denver, 142 Colo. 487, 351 P.2d 390; Blanchard v. Holland, 106 Colo. 147, 103 P.2d 18, 139 A.L.R. 159. This rule is applicable in cases where there is an agreement not to compete in business. Dutch Maid Bakeries v. Schleicher, 58 Wyo. 374, 131 P.2d 630; De Soto v. De Jaquez, 44 N.M. 564, 106 P.2d 301; Melrose v. Low, 80 Utah 356, 15 P.2d 319.

The Goldammers rely upon a number of Colorado cases which they contend entitle them to injunction as a matter of course.[3] But these cases do not so hold. They deal primarily with situations where a going business was sold for a consideration and the seller agreed not to engage in a like business within a stipulated area for a period of time, or where employees agreed not to compete in a like business. The reasons for these restrictive covenants are set forth in the Colorado cases, but those reasons do not exist in this case. In each of those cases there appears to be an open disregard of contracts entered into in good faith and upon a substantial consideration, and the right to an injunction was clear. We do not question the power of the court to enjoin in that kind of case, but here the evidence is undisputed that the Fays were not able to conduct the Dairy Queen store at a profit after paying the fixed royalty to the Goldammers. They had made previous attempts to surrender the franchise, but were induced to continue. Following the termination of the franchise, the Fays spent substantial sums of money changing the operation of their business and made a good faith attempt to remove all indications that their business was connected with the Dairy Queen organization. True, they continued along with the restaurant business to sell some soft mix ice cream similar to the Dairy Queen product, but this was done by numerous other such establishments in the immediate vicinity, and was not in open disregard of the contract. From the record it appears that an injunction would not be of any benefit to the Goldammers, and would result in serious detriment to the Fays. We agree with the trial court that the evidence is insufficient to establish that the Goldammers suffered any substantial injury from the Fay restaurant entitling them to damages, or that they would benefit from an injunction, the enforcement of which would be unjust and inequitable. Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 550, 57 S.Ct. 592, 81 L.Ed. 789. Under the circumstances, there was no abuse of discretion in denying the injunction.

Affirmed.

---

3. In the brief, the appellants cite the following cases: Barrows v. McMurtry Mfg. Co., 54 Colo. 432, 131 P. 430 (1913); Mabray v. Williams, 132 Colo. 523, 291 P.2d 677 (1955); Whittenberg v. Williams, 110 Colo. 418, 135 P.2d 228 (1943); Addressograph-Multigraph Corp. v. Kelley et al., 146 Colo. 550, 362 P.2d 184 (1961); Donahue v. Pikes Peak Automobile Co. et al., Colo., 372 P.2d 443 (1962).