**PARK COUNTY (WYOMING) RESOURCE COUNCIL, a Wyoming nonprofit corporation and Triangle X Guest Ranch (per Stan Siggins, proprietor), Plaintiffs,**

v.

**UNITED STATES BUREAU OF LAND MANAGEMENT, Defendant,**

**and**

**Snyder Oil Company, Intervenor.**

No. C86–203–K.

United States District Court, D. Wyoming.

June 25, 1986.

Robert J. Golten, Boulder, Colo., for plaintiffs.

Richard A. Stacy, U.S. Atty. for D.Wyo., Cheyenne, Wyo., for defendant.

Charles L. Kaiser of Davis, Graham & Stubbs, Denver, Colo., and Rick A. Thompson of Hathaway, Speight & Kunz, Cheyenne, Wyo., for intervenor Snyder Oil Co.

## ORDER DENYING INJUNCTION AND DISMISSING ACTION (WITH FINDINGS)

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court on plaintiffs' application for a temporary restraining order and/or motion for preliminary injunction; plaintiffs appearing by and through their attorney, Robert J. Golten; defendant Bureau of Land Management appearing by and through its attorney, Richard A. Stacy, United States Attorney for the District of Wyoming; and, defendant Intervenor Snyder Oil Company appearing by and through its attorneys,

Chuck Kaiser and Rick Thompson; and the Court having heard the arguments of counsel and having carefully considered and reviewed the pleadings, the evidence, exhibits, and all matters pertinent thereto, and being fully advised in the premises, FINDS:

This motion came before the Court on Friday, June 20, 1986 at which time this Court denied the plaintiffs' request for a temporary restraining order for lack of supporting evidence.

A full evidentiary hearing was held on Monday, June 23, 1986 at which time the parties agreed that the hearing could be consolidated with a trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2).

Preliminarily this Court observes that on June 21, 1986 plaintiff filed a notice of appeal from this Court's denial of the temporary restraining order. As this Court has not yet received a mandate from the Tenth Circuit Court of Appeals remanding the action, the jurisdiction of this Court as to the merits of this case is highly questionable. See 16 Wright & Miller, *Federal Practice and Procedure*, § 3949 (1977). However, in the interests of judicial economy and because of the urgency of this matter, the Court makes its findings and conclusions on the merits of the case in the event that the appellate court finds proper jurisdiction.

Intervenor, Snyder Oil Company (Snyder), filed an Application for Permit to Drill (APD) a single exploratory well on Federal Oil and Gas Lease W54499. Snyder proposed to drill a 3,600 foot exploratory well and to establish a 4000 foot access road from County Road 479 to the drillsite. The proposed operations were to occur on *multiple use lands* which are managed by the United States Forest Service in the Shoshone National Forest.

The plaintiffs appealed the granting of the APD to the Interior Board of Land Appeals (IBLA) but no decision has been rendered by the Board. Snyder Oil Company was to begin road working operations on Saturday, June 21, 1986. The plaintiffs filed this application for an injunction alleging that the BLM had violated its own regulations, (43 C.F.R. § 4.21(a)), by not staying its own decision to allow drilling until such time as the IBLA had rendered a decision on the appeal. Plaintiffs also claim that the Environmental Assessment prepared by the federal government failed to adequately consider certain alternatives and, therefore, violates the provisions of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq.

In order to prevail on their motion for injunctive relief, the plaintiffs must establish:

1. that there is a substantial likelihood of success on the merits;

2. that the movant will suffer irreparable injury unless the injunction issues;

3. that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

4. that the injunction would not be adverse to the public interest.

See *City of Chanute v. Kansas Gas & Elec. Co.*, 754 F.2d 310, 312 (10th Cir.1985); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Naturally, the burden of proof is incumbent upon the plaintiffs as movants. *Goldammer v. Fay*, 326 F.2d 268 (10th Cir.1964). This Court concludes that plaintiffs have failed to meet that burden both as to the request for an injunction and as to the merits of this case.

■ With respect to the merits of this case, the Court finds that the federal government's review of the Snyder lease and drilling proposal was extensive. First, the federal government examined the Shoshone National Forest Plan and the South Fork Oil and Gas Leasing Environmental Assessment, documents that had been completed within days of Snyder's filing the APD and that discussed oil and gas operations in the very area in question. Second, the federal government prepared a "scoping" document to outline other matters that should be considered in an additional environmental analysis it planned to prepare. That scoping statement was sent to

over 300 individuals and organizations, including plaintiffs. Based on the 31 written comments received on the scoping statement, the federal government prepared an environmental assessment on the Snyder APD. That environmental assessment discussed four alternatives—the no action alternative, approval of the proposal with stipulations, approval of an APD with an alternate road alignment, and approval of an APD with stipulations limiting activities in the fall. Based on that analysis, the federal government concluded that the proposal would not have a significant effect on the environment and issued the APD on May 30, 1986.

The Court has examined the environmental assessment prepared for the Snyder APD and the Shoshone National Forest Plan and the South Fork Oil and Gas Leasing Environmental Assessment that it incorporates. The Court concludes that these documents fully address the matter and that the federal government's conclusion that the proposal will not significantly affect the environment is reasonable. The evidence demonstrates that the federal government took the required "hard look" at the environmental consequences of the proposal and reasonably concluded that the proposal should be approved. *Kleppe v. Sierra Club,* 427 U.S. 390, 401, 396 S.Ct. 2718, 2766, 49 L.Ed.2d 576 (1976).

Plaintiffs allege that, in addition to the four alternatives considered in the environmental assessment, the federal government should also have considered delaying the proposed activities until the fall between mid August and mid October.

■ The plaintiffs did not raise this contention during the preparation of the environmental assessment but urged that oil and gas activities should not occur during those periods because of the potential detrimental effect on Big Horn Sheep which inhabit the area in the fall. While the defendant federal government conceded that this alternative had not been fully explored in the environmental assessment, the evidence clearly indicated that such a delay was impractical when all other as-

pects of the multiple use lands were considered and that such a delay could actually cause other adverse environmental consequences. Clearly, the federal government is not required to consider alternatives which are not reasonable. *Manygoats v. Kleppe,* 558 F.2d 569 (10th Cir.1977).

■ Plaintiffs also allege that the environmental assessment should have more fully discussed the potential effects of operations on a wilderness area located over one-half mile from the proposed operations. The environmental assessment does discuss environmental consequences on all surrounding lands, without restriction to their status as private, multiple-use, or wilderness area. The undisputed evidence demonstrates that effects on wilderness users will not be significant given the location of the wilderness on high ground shielded from the proposed operations. Finally, the Wyoming Wilderness Act of 1984 specifically provides that multiple use lands are not to be managed to provide buffer zones around wilderness areas. The discussion of this issue was reasonable. *Environmental Defense Fund v. Andrus,* 619 F.2d 1368, 1375 (10th Cir.1980).

■ Further, this Court finds no merit to plaintiffs' allegations that the BLM did not comply with its own regulations by automatically staying its decision on the APD while an appeal was pending before the IBLA. This regulation, 43 C.F.R. § 4.21(a), must be read in conjunction with all other pertinent laws and regulations. The language of 43 C.F.R. § 4.21(a) states that:

> *Except as otherwise provided by law or pertinent regulation,* a decision will not be effective during the time in which a person ... may file a notice of appeal, and the timely filing of a notice of appeal will suspend the effect of the decision appealed from pending the decision on appeal.... (Emphasis added)

43 C.F.R. § 3165.4 which applies to onshore oil and gas operations provides an applicable exception. It states in relevant part:

> ... an appeal shall not result in a suspension of the requirement for compli-

ance with the order or decision from which the appeal is taken unless the official to whom the appeal is taken determines that suspension of the requirements of the order or decision will not be detrimental to the interests of the lessor. Accordingly, it appears that the BLM has not acted contrary to its own regulations.

Having concluded that the plaintiffs have failed to meet their burden and failed to prevail on the merits of the case, the Court examines the remaining elements of plaintiffs' requested injunctive relief.

■ With regard to the necessary showing of irreparable harm, plaintiffs have shown no substantial harm other than minor inconveniences during the peak operating season to guests at the Triangle X Dude Ranch owned by plaintiff Siggins. The evidence showed that the access road is complete and that drilling operations will take approximately two weeks. The major effect of those operations will likely be some increase in sound. Long-term effects are unlikely because two other wells have been drilled within two miles of the proposed Snyder drillsite without incident. Plaintiffs' underlying concerns with regard to future expansion of oil exploration and development are speculative and not properly before the Court. The Court concludes that the alleged harm suffered by plaintiffs is not irreparable. Further, having found that the environmental assessment was adequately formulated and prepared and, therefore, not in violation of NEPA, no irreparable harm can be established on the grounds of a NEPA violation.

Further, any harm complained of by plaintiffs is substantially outweighed by the harm to be suffered by the defendant intervenor. The undisputed testimony demonstrates that Snyder has entered into a number of agreements with third parties to procure necessary services to complete the approved operations. If an injunction were issued, the evidence showed Snyder's losses would amount to $7,000 per day until June 28, 1986, and $13,700 per day thereafter. Moreover, unless drilling operations are commenced prior to July 1, 1986, the

agreement by which Snyder Oil Company obtained funds to complete the activities will terminate.

Finally, the Court concludes that the public interest is served by permitting the approved operations to proceed. The evidence demonstrates that the federal government thoroughly considered the proposal. They approved the proposal subject to a whole array of mitigation requirements. Operations have begun. The expected effects of those operations are to be insignificant and the federal government has complied with all legal requirements. No more is required. *Cabinet Mountain Wilderness v. Peterson*, 685 F.2d 678 (D.C. Cir.1982); *Park County Resource Council v. Department of Agriculture*, 613 F.Supp. 1182 (D.Wyo.1985).

NOW, THEREFORE, IT IS

ORDERED that based on the foregoing reasons, plaintiffs' application for injunctive relief, be, and the same is, hereby denied; it is

FURTHER ORDERED that this action be, and the same is, hereby dismissed with prejudice.