Dennis WAKABAYASHI, d/b/a a Moonchild and d/b/a Leo Rising; Mile High One Stop, Inc., a Colorado Corporation; Greg Porter, d/b/a Home Sweet Home; Happy Trails, Inc., a Colorado Corporation; James Janus, d/b/a Janus Industries, Plaintiffs-Appellees,

v.

Dale TOOLEY in his official capacity as District Attorney for the County of Denver; Arthur Dill in his official capacity as Chief of Police for the City and County of Denver, Defendants-Appellants.

No. 81SA378.

Supreme Court of Colorado, En Banc.

July 19, 1982.

**656**

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Bradley J. Reich, Denver, for plaintiffs-appellees.

Dale Tooley, Dist. Atty., Second Judicial District, O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., John R. Olsen, Keith Dwight Johnson, Deputy Dist. Attys., Denver, for defendants-appellants.

ERICKSON, Justice.

This is an appeal from an order granting a motion for a preliminary injunction to the appellees, Wakabayashi et al., (Wakabayashi) enjoining the appellants, Tooley et al., from enforcing sections 12–22–501 et seq., C.R.S.1973 (1978 Repl. Vol. 5) (1981 Supp.) and 16–13–303(1)(f), C.R.S.1973 (1978 Repl. Vol. 8) (1981 Supp.), relating to the distribution and use of drug paraphernalia. We reverse and remand to the district court for further proceedings consistent with this opinion.

### I.

On April 10, 1980, the General Assembly enacted H.B. 1190 for the purpose of controlling the distribution and use of drug paraphernalia.[1] Colo.Sess.Laws 1980, ch. 65, 12–22–501 et seq. at 470–72 (now codified in sections 12–22–501 et seq., C.R.S.

1973 (1978 Repl.Vol. 5) (1981 Supp.) and section 16–13–303(1)(f), C.R.S.1973 (1978 Repl. Vol. 8) (1981 Supp.)). The legislative enactment in issue contains the following provisions:

(1) Section 12–22–501 sets forth the General Assembly's finding that possession, sale, manufacture, delivery, and advertisement of drug paraphernalia encourages illegal use of controlled substances. The section declares that the purposes of the statute are to deter the use of controlled substances and to promote the public peace, health, safety, and welfare.

(2) Section 12–22–502 defines "drug paraphernalia" as follows:

" 'Drug paraphernalia' means any machine, instrument, tool, equipment, or device which is primarily designed and intended for one or more of the following:

(a) To introduce into the human body any controlled substance under circumstances in violation of the laws of this state;

(b) To enhance the effect on the human body of any controlled substance under circumstances in violation of the laws of this state;

(c) To conceal any quantity of any controlled substance under circumstances in violation of the laws of this state;

(d) To test the strength, effectiveness, or purity of any controlled substance under circumstances in violation of the laws of this state."

(3) Section 12–22–503 sets forth eleven specific considerations to be considered by a court in determining whether an object is drug paraphernalia.

(4) Section 12–22–504 prohibits the possession of drug paraphernalia with the intent to use it in violation of Colorado law. A violation of this section is a class 2 petty offense.

---

1. The effective date of H.B. 1190 was July 1, 1980. In the 1981 legislative session, the General Assembly amended the definition of drug paraphernalia contained in section 12–22–502(2), Colo.Sess.Laws 1981, ch. 130, 12–22–502(2) at 743.

(5) Section 12–22–505 prohibits the sale, delivery, or manufacture of, or possession with intent to sell or deliver, equipment, products or materials intended for use as drug paraphernalia. A violation of this section is a class 2 misdemeanor.

(6) Section 12–22–506 prohibits the advertisement of drug paraphernalia with the intent to promote its sale. A violation of this section is a class 2 misdemeanor.

(7) Section 16–13–303(1)(f) declares buildings and grounds used for the unlawful manufacture, sale, or distribution of drug paraphernalia to be public nuisances.

## II.

On July 17, 1981, Wakabayashi filed a complaint in the Denver District Court seeking declaratory and injunctive relief from the enforcement of the drug paraphernalia statute on the grounds that the statute was unconstitutional under the Colorado and United States Constitutions. After an evidentiary hearing, the trial court granted Wakabayashi's motion for a preliminary injunction, thereby enjoining the enforcement of the drug paraphernalia statute pending a final determination on the merits of the claim for declaratory judgment that the statute was unconstitutional. In its oral findings of fact and conclusions of law, the trial judge stated that the party seeking a preliminary injunction must show:

"[O]ne, that an irreparable harm would result were not the preliminary injunction granted; secondly, they must show a likelihood of prevailing on the merits, and in light of the fact that this is a utilization in part of the police powers of the State in controlling drug and drug trafficking as its ultimate goal, it is a matter of public interest, and there, last but not least, must be a balancing of equities between the parties, so that the Court must determine whether or not the status quo situation would result in the better administration of justice."

Thereafter, the district court found: (1) that irreparable harm could result to Wakabayashi unless a preliminary injunction was granted; (2) that the appellees were likely to prevail on the merits of their constitutional challenge to the drug paraphernalia statute; and (3) that the equities of the case favored preliminary injunctive relief. Based on these findings, the court entered its order granting the preliminary injunction, and this appeal followed.

## III.

In *Rathke v. MacFarlane,* 648 P.2d 648 (Colo.1982), we stated that, in view of the extraordinary nature of preliminary injunctive relief to prevent the enforcement of a criminal statute, such relief is only justified in the most exceptional circumstances. Therefore, "before a trial court may enjoin the enforcement of a penal statute in a preliminary injunction proceeding, the moving party must establish, as a threshold requirement, a clear showing that injunctive relief is necessary to protect existing legitimate property rights or fundamental constitutional rights." *Id.* In addition, we set forth six factors in *Rathke* which are prerequisites to the granting of a preliminary injunction pursuant to C.R.C.P. 65(a), and concluded that each prerequisite must be established by the moving party before a preliminary injunction will issue to prevent the enforcement of a criminal statute.[2]

In this case, the trial court made no specific findings as to whether Wakabayashi satisfactorily established the threshold requirement, or whether the granting of

---

**2.** The prerequisites are that the moving party must demonstrate: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) that there is no plain, speedy, and adequate remedy at law; (4) that the granting of a preliminary injunction will not disserve the public interest; (5) that the balance of equities favors the injunction; (6) that the injunction will preserve the status quo pending a trial on the merits.

**658**

a preliminary injunction would disserve or be contrary to the public interest. *See American Television and Communications Corp. v. Manning* (Court of Appeals No. 81CA0601, announced June 17, 1982). Moreover, our review of the trial court's findings fails to show that the proper legal standard was applied in determining whether Wakabayashi established a reasonable probability of success on the merits. *See Rathke v. MacFarlane, supra; Combined Communications v. Denver*, 186 Colo. 443, 528 P.2d 249 (1974); *O'Connell v. Colorado State Bank*, 633 P.2d 511 (Colo.App.1981). The trial judge stated:

> "[Because Wakabayashi has] raised serious questions in the mind of this Court as well as other questions which have been raised in counsel's for the plaintiffs' brief as to the constitutionality of the statute, the Court feels that the plaintiff has met his burden of showing the likelihood of success in the trial on the merits."

A showing of a reasonable probability of success to enjoin the enforcement of a criminal statute requires the district court to find that the moving party has established a reasonable probability that the contested statute is unconstitutional beyond a reasonable doubt. *See Rathke v. MacFarlane, supra.* In view of the district court's determination that Wakabayashi had met the burden of showing a likelihood of success on the merits by establishing "serious questions" as to the constitutionality of the statute, the proper legal standard was not applied in this case. Under the circumstances, we therefore conclude that the district court abused its discretion in granting the motion for a preliminary injunction.

Accordingly, we reverse the decision of the trial court and remand for proceedings in accordance with the views expressed in this opinion.

HODGES, C. J., does not participate.