534 P.2d 1232 (1975)
Allen D. MILLER and Frank P. Klotz, Plaintiffs-Appellants,
v.
The BOARD OF TRUSTEES OF the TOWN OF PALMER LAKE et al., Defendants-Appellees.
No. 74-190.
Colorado Court of Appeals, Div. II.
April 29, 1975.
Isaac, Walsh & Johnson, Robert M. Isaac, Colorado Springs, for plaintiffs-appellants.
Thomas R. Cross, Colorado Springs, for defendants-appellees the Board of Trustees of the Town of Palmer Lake; The Town of Palmer Lake; Gail Krafft, acting as Clerk of the Town of Palmer Lake; and Sue Hanson, Randall Warthen, Keith Beckman, Clare Brenneman, Brice Follmer, Leslie Havens, and Frances Vanaken, members of the Board of Trustees of the Town of Palmer Lake.
Kane, Donley & Wills, Lee R. Wills, Colorado Springs, for defendants-appellees *1233 Sharon Granata, David Theile, and Armand Granata, d/b/a G. T. Dirt and Snow Machines.
Selected for Official Publication.
STERNBERG, Judge.
This appeal concerns the applicability of the doctrine of estoppel to municipal corporations in zoning situations. The district court held that under the facts of this case the doctrine should be invoked. We affirm in part and reverse in part.
The defendants, Sharon Granata, David Theile, and Armand Granata, are business partners. They intend to operate a business of selling and servicing motorcycles and snow machines on property in Palmer Lake, fronting on a state highway. Plaintiffs own acreages devoted to residential use which are located in and adjacent to Palmer Lake and in the vicinity of the partners' property.
Prior to acquiring title to the land, the partners applied to the Town Board for a business license in 1973, indicating the approximate location of their business. No ordinance prohibited commercial use of the property at that time. Despite some discussion concerning the possibility of the area being zoned in the future for residential use, a license was approved at the Town Board meeting of October 11, 1973. The partners paid a $10 occupation tax, and the license was issued. On October 13, 1973, the partners made a preliminary application for a Small Business Administration loan.
At the Board meeting of November 8, 1973, pursuant to prior published notice, a zoning ordinance was adopted which became effective on December 8, 1973. This ordinance designated the partners' land to be in the R-1 category, which is a low-density residential zone permitting no commercial use.
On December 11, 1973, the partners signed a contract to purchase the land in question, on January 23, 1974, their S.B.A. loan was approved, and on February 18, 1974, they contracted for purchase and installation of a pre-fabricated building. On that date, they also ordered part of their inventory. On February 22, using money from the S.B.A. guaranteed loan, the partners closed the real estate transaction.
On March 6, the contractor employed by the partners applied for a building permit on their behalf. He received notice on March 9 that the permit would be issued and made arrangements to receive the pre-engineered steel building. The building permit was issued on March 11, at which time the steel building was delivered and paid for, and construction of the foundation was commenced. Work on the site continued until Friday, March 15, when a cease work order was issued by a building inspector following a resident's complaint and pursuant to an order from the Mayor. The cease work order was lifted on Monday, March 18, whereupon plaintiffs filed suit claiming that defendants' land was zoned for residential use only. As a result, a temporary restraining order was issued. No work has been done on the premises since March 15, 1974.
Following a hearing on application for a preliminary injunction, the court quashed the temporary restraining order, denied the preliminary injunction, and dismissed the complaint stating that all matters concerning a permanent injunction had been presented at that hearing. On the evidence presented, the court found that the partners "sold everything they could" to raise the $10,000 working capital required to get the $30,000 S.B.A. guaranteed loan, contracted for construction of the building in the amount of $14,000, and purchased the business site with $3,500 from the S.B. A. account. Also, the court found that after issuance of the permit, and before the cease work order, the partners incurred liability for $2,300 worth of on-site work and $6,500 for the steel building. It further found that the partners reasonably relied on the town officials' actions and statements to their substantial detriment, that the partners were unaware of any zoning change affecting their property until the cease work notice was issued, and *1234 that, therefore, estoppel in pais applied to the facts of this case.
Plaintiffs assert several grounds for error. All of them are integrally related to the central issue of whether the doctrine of estoppel applies to the defendant town under the facts of this case.
Colorado has recognized that, in a situation where a building permit was erroneously issued, the "doctrine of estoppel in pais is fully applicable against a municipality if it is necessary to invoke it to prevent manifest injustice." City & County of Denver v. Stackhouse, 135 Colo. 289, 310 P.2d 296. As stated in Crawford v. McLaughlin, 172 Colo. 366, 473 P.2d 725, the "doctrine is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result."
In Cline v. City of Boulder, 168 Colo. 112, 450 P.2d 335, the court declined to apply the doctrine of estoppel where it inferred from the evidence that "the Clines obtained a permit merely as a tactic." Such tactical attempts to circumvent the effect of new zoning are not present here. Likewise, City of Sheridan v. Keen, Colo. App., 524 P.2d 1390, is inapposite since there was no proof of detrimental reliance on representations of the city in that case.
Here, the building permit was issued by the town in contravention of a newly enacted zoning ordinance, and, not considering any expenditures made prior to March 11, the date of issuance of the building permit, the partners have incurred liability for some $8,800 in reliance on the permit. Furthermore, not only had the partners obtained a building permit, and, based thereon, acted to their financial detriment, but they had also received a business license some months earlier at a meeting at which the intended zoning had been discussed.
In that regard, when the town officials approved the license, the permittees justifiably could have been misled by the colloquy that took place among the Board members, the Mayor, and the town attorney over the effect of possible future zoning of the property. If the Board itself could determine that it was proper to allow such a business to be pursued, even after conferring with the town attorney, we cannot impute to a layman full knowledge and complete understanding of the applicable ordinances and of the possible effect of adoption of a future zoning ordinance.
A similar situation was addressed in Cities Service Oil Co. v. City of Des Plaines, 21 Ill.2d 157, 171 N.E.2d 605. There an oil company had erected a service station in violation of a zoning ordinance, but in reliance on both a building permit issued by the city and apparent subsequent acquiescence by city officials. The Illinois Supreme Court affirmed the application of equitable estoppel where the oil company had no knowledge of the ordinance violated and undertook construction in good faith. After recognizing the general rule that "a city cannot be estopped by an act of its agent beyond the authority conferred upon him," the court went on to say:
"The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done."
In the instant case, the trial court found that the partners had acted in good faith, and that they did not know of the zoning change until after they had relied on the building permit. Since evidence in the record supports those findings and since the parties have expended over $8,000 to their substantial detriment, we hold that it was appropriate to apply the doctrine of estoppel in pais to the facts of this case.
While the point was not argued in this court, the plaintiffs did urge in their motion for new trial that the court erred in dismissing the entire action on the hearing for a preliminary injunction. We agree. Absent a stipulation that the hearing *1235 would be on both the preliminary and permanent injunction, or that plaintiffs had no additional evidence to present, the trial court should not have dismissed the complaint at this stage of the proceedings. See Allen v. City & County of Denver, 142 Colo. 487, 351 P.2d 390. Hence, the trial court's ruling on the preliminary injunction is affirmed, but the cause is remanded with directions to reinstate the complaint to allow plaintiffs to present additional evidence, if any there be, in support of their request for a permanent injunction.
We have reviewed plaintiff's other contentions and, in view of our holding above, find them to be without merit.
Judgment affirmed in part, reversed in part, and cause remanded with directions.
ENOCH and PIERCE, JJ., concur.